United States District Court
Eastern District of New York

1:18-cv-03529

Michael Pizzirusso individually and on behalf of all others similarly situated

                        Plaintiff

- against -

Complaint

Chicago Bar Company, LLC

                        Defendant

Plaintiff by attorneys allege upon information and belief, except for allegations pertaining to plaintiff, which are based on personal knowledge:

1. RX Bar ("defendant") manufactures, distributes, markets, labels and sells food bars which have attributes of snack and nutrition foods.

2. The Products are available in two product lines, "RXBAR" and "RXBAR Kids."

3. The Products are characterized by their austere principal display panel representations which include the brand name, the number of protein grams (12 G. PROTEIN BAR for RXBAR 7 G. PROTEIN BAR for RXBAR Kids), a vertical list of components in the Products along with a number corresponding to same, a prominent statement disclaiming the presence of harmful, undesirable, less-valued ingredients (styled as "No B.S." on the RX Bar and "No Bad Stuff" on the RXBAR Kids) and the flavor/variety designation (i.e., Blueberry for RXBAR and Berry Blast for RXBAR Kids).

RXBAR                    RXBAR Kids



4.     The Products contain common ingredients, declared in the same fashion across the RXBAR (top) and RXBAR Kids (bottom).[1]

---

[1] Ingredients: Dates, Egg Whites, Almonds, Cashews, Blueberries, Natural Blueberry Flavor; Ingredients: Dates, Egg Whites, Almonds, Cashews, Strawberries, Raspberries, Blueberries, Natural Strawberry Flavor, Natural Raspberry Flavor, Natural Raspberry Flavor, Natural Blueberry Flavor.



5. Defendant's marketing message is built around the promotion of "real" ingredients and alludes to other companies that "hide" unfavorable or artificial ingredients deep in their ingredient list on the back of the package.







6. Eggs are one of most important source of nutrients, providing proteins, lipids (essential unsaturated fatty acids (oleic acid and linoleic acid)) and vitamins like iron, phosphate and trace minerals.

7. Eggs contribute significantly during rapid growth of the body by providing essential nutrients and hence an excellent food for growing children and teenagers, as shown by defendant's marketing materials directed towards this age group.



8. An egg is composed of 9–11% eggshell, 60–63% egg white, and 28–29% egg yolk.

9. The main components are 12% lipids, 12% proteins, and around 75% water, carbohydrates and minerals.

10. Proteins are distributed throughout the egg, but most of them are present in the egg yolk (44%) and egg white (50%), the remaining 6% in the eggshell and eggshell membrane.

11. Reasonable consumers are familiar with egg whites, since they are often consumed for their protein content.

12. Defendant capitalizes on this association.



13. Egg whites are often converted to a liquid or powdered (dried) form to provide

5

convenience, portion control, product quality and uniformity.

14. Because egg whites serve the same function whether they are liquid, fresh or dried, they can be listed as "egg whites" on the ingredient list.[2]

15. Egg whites are required to be made in a standardized way with certain parameters because they are an important part of food production, from a family kitchen to commercial manufacturing.

16. When converted into the powdered form, a spray-drying process is used – liquid egg whites (droplets; 10–200 µm) are subjected high pressure (130–200 bar or 2000–3000 psi) and injected into hot air (160–194°C) for 12 seconds, evaporating the egg whites into powder.

17. The egg whites will be pasteurized for safety and will undergo glucose removal to prevent caramelization, the Maillard reaction (browning) and to ensure a product stability and consistency.

18. Whipping aids like sodium-lauryl-sulfate can be incorporated, to increase the egg whites' utility in "whipping" things like batters, meringues, etc.

19. This ability to aid in air entrapment is invaluable in aerated food systems, because the introduction of air in the form of tiny bubbles is favored by proteins that, when adsorbed at the air-water interface, retain an appreciable proportion of their structure.

20. The proteins in egg whites help in providing structure to baked products because they coagulate, like the way gluten proteins do.

21. This is because the beaten egg whites incorporate air in tiny cells or bubbles, which cause expanding.

22. The functionality of egg whites is attributed <u>not to any specific protein</u>, but to the

---

[2] 21 C.F.R. § 101.4(b)(11).

entire white as a whole.

23. For instance, ovalbumin and ovotransferrin, the major proteins in egg white, and theoretically the proteins likely to contribute to foaming quality, actually showed poor foaming properties when utilized individually compared to the entire egg white. See A. Kato, <u>Interactions of Egg White Proteins</u> in: A. Gaonkar, ed., *Ingredient Interactions: Effects on Food Quality*, 1st ed. (1995) New York: Marcel Dekker, Inc., pp.357-396.

24. The different proteins are present in varying amounts and can perform different functions when separated from the egg white.

| Egg White Protein | Percent in Egg White | Functions/Uses |
| --- | --- | --- |
| ovalbumin | 54 | nutrient supplement |
| ovotransferrin | 12 | antimicrobial |
| ovomucoid | 11 | inhibit tumor growth, anticancer agent |
| ovomucin | 3.5 | tumor suppression agent |
| lysozyme | 3.5 | food preservative |

25. The above proteins are separated from the egg whites through treating the albumen with an equal volume of saturated ammonium sulfate.

26. This causes the globulin fraction to precipitate together with lysozyme, ovomucin and other globulins, while the major portion of the egg white remains in solution.

27. Defendant does not utilize egg white powder in its complete form, which would have entitled it to utilize the name "egg whites" to refer to the subject ingredient.

28. Instead, defendant utilizes one or more of the egg white fractions, but not the entire egg white, which is not consistent with the requirements that egg whites refer to the liquid egg albumen separated from yolks, adequately treated and modified for its intended purpose (pasteurization to destroy bacteria, whipping aids if necessary).

29. It is not possible for the Products to contain "egg whites" as that term is understood

by consumers and regulations because the foaming properties of egg whites would limit the ability to blend it with the other ingredients.

30. Defendant is likely aware of its use of the term "egg whites" as opposed to "egg white protein powder" because prior iterations of its packaging used a correct term.



31. Consumers would not be as drawn to a product which boldly promoted the presence of "Egg White Protein Powder."

32. Furthermore, parents correctly wouldn't want to buy their young children foods which contained concentrated protein powders, for a variety of reasons related to normal adolescent and child development.

33. Moreover, the fruit pieces incorporated into the Products are "infused" (flavored) with sweetening agents such as apple juice concentrate, contrary to defendant's labels and

8

messaging which emphasize "real fruit" to provide flavor.



34. Excluding tax, the Products cost no less than $4.99, a premium price compared to other similar products.

Jurisdiction and Venue

35. Jurisdiction is proper pursuant to 28 U.S.C. § 1332(d)(2).

36. Upon information and belief, the aggregate amount in controversy is more than $5,000,000.00, exclusive of interests and costs.

37. This Court has personal jurisdiction over defendant because it conducts and transacts business, contracts to supply and supplies goods within New York.

38. Venue is proper because plaintiff and many class members reside in this District and defendant does business in this District and in New York.

39. A substantial part of events and omissions giving rise to the claims occurred in this District.

Class Allegations

40. The classes consist of all consumers in the following states:  all  ,  New York  who

9

purchased any Products with actionable representations during the statutes of limitation.

41. A class action is superior to other methods for fair and efficient adjudication of this controversy.

42. The class is so numerous that joinder of all members, even if permitted, is impracticable, as there are likely hundreds of thousands of members.

43. Common questions of law or fact predominate and include whether the representations were likely to deceive reasonable consumers and if plaintiff(s) and class members are entitled to damages.

44. Plaintiff(s) claims and the basis for relief are typical to other members because all were subjected to the same representations.

45. Plaintiff(s) is/are an adequate representative because his/her/their interests do not conflict with other members.

46. No individual inquiry is necessary since the focus is only on defendant's practices and the class is definable and ascertainable.

47. Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest.

48. Plaintiff(s) counsel is competent and experienced in complex class action litigation and intends to adequately and fairly protect class members' interests.

49. Plaintiff(s) seeks class-wide injunctive relief because the practices continue.

### Parties

50. Plaintiff is a citizen of Richmond County, New York.

51. In 2017, plaintiff purchased one or more of the Products personal consumption, for no less than $4.99, excluding tax, at a store located within their respective districts.

52. Defendant is an Illinois limited liability company with no members being citizens of

New York.

53. Plaintiff paid this premium because prior to purchase, plaintiff saw and relied on the misleading representations.

New York General Business Law ("GBL") §§ 349 & 350

54. Plaintiffs incorporates by references all preceding paragraphs.

55. Defendant's acts, practices, advertising, labeling, packaging, representations and omissions are not unique to the parties and have a broader impact on the public.

56. Plaintiff desired to purchase a healthy food bar which provided nutritional value derived from foods in the forms promoted by defendant (i.e., egg whites, non-juice infused fruit pieces) and believed that he/she did so based on the representations of defendant.

57. Defendant's representations are false, unfair, deceptive and misleading for the reasons described herein.

58. The representations and omissions were relied on by plaintiff and class members, who paid more than they would have otherwise, causing damages.

Negligent Misrepresentation

59. Plaintiff incorporates by references all preceding paragraphs.

60. Defendant misrepresented the composition of the Products by promoting its honesty and transparency with respect to its ingredients when in fact, the Products mislabel their ingredients which are contained therein.

61. By emphasizing the "look at us, nothing to hide" approach, reasonable consumers will take up defendant, thinking, "what could they be hiding if they're so upfront? Sure, this makes sense."

62. Defendant had a duty to disclose, in a manner prescribed by law, that its Products did not contain ingredients as it represented them.

11

63. At the time of the representations, defendant knew or should have known same were false or misleading.

64. Defendant negligently misrepresented and/or negligently omitted material facts.

65. Plaintiff reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, the purchase of the Products.

66. Plaintiff and class members would not have purchased the Products or paid as much if the true facts had been known, thereby suffering damages.

## Breach of Express Warranty and Implied Warranty of Merchantability

67. Plaintiff incorporates by references all preceding paragraphs.

68. Plaintiff incorporates by references all preceding paragraphs.

69. Defendant manufactures and sells food protein bar products purporting to consist of "real" ingredients instead of the concentrated protein powders (which are not permitted to be labeled under the "egg whites" name.

70. Defendant warranted to plaintiff and class members that the Products were made of such, and other ingredients, when they were not.

71. The Products did not conform to their affirmations of fact and promises, wholly due to defendant's actions.

72. Plaintiff and class members relied on defendant's claims, paying more than they would have otherwise.

## Fraud

73. Plaintiff incorporates by references all preceding paragraphs.

74. Defendant's purpose was to mislead consumers who seek healthy snack foods which are not made of artificial, chemical-sounding, un-pronounceable ingredients.

75. Defendant's intent was to dupe consumers with its transparency while slipping by the misrepresentations which cut to the core of the Products.

76. Plaintiff and class members observed and relied on defendant's claims, causing them to pay more than they would have otherwise, entitling them to damages.

## Unjust Enrichment

77. Plaintiff incorporates by references all preceding paragraphs.

78. Defendant obtained benefits and monies because the Products were not as represented, to the detriment and impoverishment of plaintiff and class members, who seek restitution and disgorgement of such inequitably obtained profits.

## Jury Demand and Prayer for Relief

Plaintiff demands a jury trial on all issues.

**WHEREFORE,** plaintiffs pray for judgment:

1. Declaring this a proper class action, certifying plaintiff(s) as representative and the undersigned as counsel for the class;

2. Entering preliminary and permanent injunctive relief by directing defendant(s) to correct such practices to comply with the law;

3. Awarding monetary damages and interest, including treble and punitive damages, pursuant to the common law and GBL claims;

4. Awarding costs and expenses, including reasonable fees for plaintiffs' attorneys and experts; and

5. Such other and further relief as the Court deems just and proper.

Dated: June 15, 2018

                                                            Respectfully submitted,

                                                            Levin-Epstein & Associates, P.C.
                                                            /s/Joshua Levin-Epstein

                                                      Joshua Levin-Epstein
                                                      1 Penn Plaza, Suite 2527
                                                      New York, NY 10119
                                                      Tel: (212) 792-0046

                                                      Sheehan & Associates, P.C.
                                                      /s/Spencer Sheehan
                                                      Spencer Sheehan
                                                      891 Northern Blvd., Suite 201
                                                      Great Neck, NY 11021
                                                      Tel: (516) 303-0552
                                                      spencer@spencersheehan.com

1:18-cv-03529
United States District Court
Eastern District of New York

Michael Pizzirusso and Joanne Miller individually and on behalf of all others similarly situated

Plaintiffs

- against -

Chicago Bar Company, LLC

Defendant(s)

## Complaint

Levin-Epstein & Associates, P.C.
1 Penn Plaza # 2527
New York, NY 10119
Tel: (212) 792-0046
Fax: (212) 563-7108

Pursuant to 22 NYCRR 130-1.1, the undersigned, an attorney admitted to practice in the courts of New York State, certifies that, upon information, and belief, formed after an inquiry reasonable under the circumstances, the contentions contained in the annexed documents are not frivolous.

Dated:  June 15, 2018

/s/ Joshua Levin-Epstein
Joshua Levin-Epstein